Slip Op. 12-125

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WILTON INDUSTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Gregory W. Carman, Judge <br><br> Court No. 10-00066 |

[*Plaintiff's motion for summary judgment is denied and Defendant's cross motion for summary judgment is granted.*]

*Maria E. Celis, John M. Peterson,* and *Richard F. O'Neill,* Neville Peterson LLP, of New York, NY, for Plaintiff.

*Beverly A. Farrell,* Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for Defendant. On the briefs were *Tony West,* Assistant Attorney General, *Barbara S. Williams,* Attorney in Charge, International Trade Field Office, United States Department of Justice, and *Yelena Slepak,* Of Counsel, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection.

September 27, 2012

### OPINION

**CARMAN, JUDGE:** This matter is before the Court on a Motion for Summary Judgment by Plaintiff Wilton Industries, Inc. ("Plaintiff" or "Wilton") and a Cross Motion for Summary Judgment by Defendant United States ("Defendant" or "Customs"). The

parties dispute the correct tariff classification of decorative punches, imported by Plaintiff. For the reasons set forth below, Plaintiff's motion is denied, and Defendant's cross motion is granted.

## FACTUAL BACKGROUND

Plaintiff is an importer of the subject merchandise, decorative punches from Taiwan. Pl.'s Statement of Material Facts as to Which No Genuine Issue Exists ("Pl.'s Facts") ¶¶ 1-3; Def.'s Resp. to Pl.'s Statement of Material Facts as to Which No Genuine Issue Exists ("Def.'s Resp. Facts") ¶ 1; Def.'s Statement of Material Facts as to Which No Genuine Issue Exists ("Def.'s Facts") ¶ 5; Pl.'s Resp to Def.'s Statement of Material Facts as to Which No Genuine Issue Exists ("Pl.'s Resp. Facts") ¶ 5. The subject merchandise was imported into the Port of Los Angeles, California, between July 7 and October 25, 2008. Pl.'s Facts ¶3; Def.'s Resp. Facts ¶3; Def.'s Facts ¶4; Pl.s' Resp. Facts ¶4.

The parties do not dispute the nature and identity of the imported articles, which are all the brand "Stampin' Up!" punches that cut shapes or designs out of or in paper and that come in a variety of shapes and sizes. Def.'s Facts ¶ 5; Pl.'s Resp. Facts ¶ 5; Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s Cross Mot.") at 3. Each of the punches is capable of making a hole of an intended shape or trimming the edge or corner of the paper with a decorative design. Pl.'s Facts ¶ 2; Def.'s Resp. Facts ¶ 2. Subject punches are used in scrap booking

and craft projects involving the creation or decoration of invitations, cards, and other decorative items. Pl.'s Facts ¶ 1; Def.'s Resp. Facts ¶ 1. There are twelve entries that encompass thirty-nine models of punches at issue in this case. Def.'s Cross Mot., Attach. A.

After filing this action, Plaintiff provided Customs twenty representative samples of punches, referred to as "Twenty Punches" by the parties, to reconsider the classification of the subject merchandise. Def.'s Cross Mot. at 2. These Twenty Punches, however, are not the imported articles in this case. Def.'s Facts at ¶¶ 6-7; Decl. of Kathy Campanelli, National Import Specialist, Customs ("NIS Decl.") at ¶ 5. Nevertheless, Customs used the Twenty Punches and compared them with images of the imported articles to determination classification. NIS Decl. at ¶ 11; Def.'s Cross Mot. at 11-12. Customs agreed to classify twenty-three models of the punches under Plaintiff's proposed classification of Subheading 8441.10.00, HTSUS, which is duty free,[6] "in an effort to resolve this action." Def.'s Supplemental Mem. of Law in Further Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s Suppl. Br.") at 2. For the remaining sixteen punches, however, Customs maintained that the proper classification is under

---

[6]Subheading 8441.10.00, HTSUS, provides:

| 8441 | Other machinery for making up paper pulp, paper or paperboard, including cutting machines of all kinds, and parts thereof: |
|---|---|
| 8441.10.00 | Cutting machines |

**Court No. 10-00066**                                                                                              Page 4

Subheading 8203.40.60, HTSUS, with 3.3% duty margin[7] because these remaining punches "are intended for use when held in the hand." Def.'s Cross Mot. at 3.

Because it was unclear exactly how many of the subject punches were actually in dispute and how the parties came to agreement for those not in dispute, the Court requested an in-person conference, held on July 19, 2012, to clarify the subject merchandise in this case. The Court also requested that the parties file physical samples of all the subject merchandise. In response, the parties explained that there are thirty-nine punches at issue but that there are only sixteen punches in dispute for the Court to decide.[8] Plaintiff stated that Defendant requested physical "samples or items similar to the merchandise" for only nine of the subject punches. Resp. Letter to Ct. from Pl., ECF No. 46. Plaintiff managed to produce thirty-seven of the thirty-nine subject punches,[9]

---

[7]Subheading 8203.40.60, HTSUS, provides:

| 8203 | Files, rasps, pliers (including cutting pliers), pincers, tweezers, metal cutting shears, pipe cutters, bolt cutters, perforating punches and similar handtools, and base metal parts thereof. |

. . .

| 8203.40.60 | Other (including parts). |

[8]The parties jointly submitted a stipulation to the agreed upon classification for the twenty-three punches not in dispute. Stipulation, ECF No. 62.

[9]Plaintiff submitted a table of the subject merchandise and attached a sample number to each of the thirty-nine punches at issue for ease of reference. Pl.'s Letter Explaining Sample Numbers and Designations, ECF No. 54. In this table, Plaintiff

despite the fact that many of the models have been discontinued. The two missing punches are one corner punch (#11) that is in dispute and one large punch that is not in dispute (#16). Plaintiff provided images and a narrative description for the missing punches which the Court deems sufficient to determination classification. The parties broke down the subject punches according to size: small, medium and large.[10] The following table provides the breakdown of the different sizes of punches plus the two that do not fit into the size breakdown, a corner punch and a scallop-edged punch:

|  | Small | Medium | Large | Other |
| --- | --- | --- | --- | --- |
| Total Punches | 8 | 6 | 23 | 1 corner<br>1 scallop-edged |
| In Dispute | 8 | 6 | 1 | 1 corner |
| Not in Dispute | -- | -- | 22 | 1 scallop-edged |

The parties have also jointly submitted a narrative description of each of the subject punches, along with component and base plate breakdowns, as requested by the Court.

---

acknowledged that four of the punches in dispute (#23, #24, #36, and #37) that were provided to the Court are "not the actual article but substantially similar." Parties Joint Submission of Spreadsheets of Disputed Paper Punches, ECF No. 62-1. The differences are as follows: #23 is missing the "Stampin' up" logo; #24 is the European version; #36 is gray instead of black and is missing the "Stampin' up" logo; and #37 is made for the retailer and not retained in Wilton's system. Pl.'s Letter Explaining Sample Numbers and Designations, ECF No. 54. Defendant has not disputed the similarity of the provided punches and therefore the Court accepts the substantially similar punches as subject punches.

[10] Two of the punches do not fit into the size breakdown: #31 (not in dispute) and #11 (in dispute and not provided to the Court). Parties Joint Submission of Spreadsheets of Disputed and Non-Disputed Paper Punches, ECF Nos. 62-1, 62-2.

Parties Joint Submission of Spreadsheets of Disputed and Non-Disputed Paper Punches, ECF Nos. 62-1, 62-2. For all the subject punches, regardless of size or shape, the component breakdown is essentially the same: the die components comprise approximately 75% of the total weight of each subject punch, while the housing, bottom, handle and springs comprise the balance of the weight. Because the weight and materials ratio are substantially similar for all the punches, the Court analyzes the various punches as one subject merchandise.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2006). Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." USCIT R. 56(c).

Although Customs usually enjoys a statutory presumption of correctness in its classification decisions, this does not apply to pure issues of law in a summary judgment motion before this Court. *Universal Elec. Inc. v. United States*, 112 F.3d 488, 492 (Fed. Cir. 1997). This Court "does not defer to Customs' decisions because it has been tasked by Congress to conduct a *de novo* review, and to determine the correct classification based on the record made before it." *Universal Elec.*, 112 F.3d at 493; *see* 28 U.S.C. § 2640(a). Ultimately, this Court's "duty is to find the *correct* result, by whatever

procedure is best suited to the case at hand." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) (emphasis in original).

Resolution of a disputed classification entails a two-step process: (1) ascertaining the proper meaning of specific terms in the relevant tariff provisions; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999). When "the nature of the merchandise is undisputed, . . . the classification issue collapses entirely into a question of law." *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006) (citations omitted).

## DISCUSSION

The Court acknowledges the parties' good faith attempt to come to agreement regarding the classification of the subject merchandise. However, under *Jarvis Clark*, *supra*, the Court is charged with the duty to find the correct classification for all the entries in the case. Therefore, the Court looks at all of the subject merchandise before it, including the punches that the parties present as not in dispute.[11]

### I. Proposed Classifications

---

[11] The Court commends the parties' good faith attempt to come to an agreement, and reluctantly disregards the stipulation of agreed classification for twenty-three of the subject punches. Defendant explained that it merely agreed to Plaintiff's classification "in an effort to resolve this action," not because Customs believes that is the correct classification. Def.'s Suppl. Br. at 2.

Court No. 10-00066                                                                                                           Page 8

      Plaintiff contended that Customs "has repeatedly misclassified its paper punching product as a matter of law. [Plaintiff] submits that the punches are properly classified as 'cutting machines' under HTS 8441.10.00 and entitled to receive [sic] duty-free treatment." Pl.'s Mem. of Points and Authorities in Supp. of Pl.'s Mot. for Summ. J. (Pl.'s Mot.) at 2. Plaintiff asserted that the subject punches are machines because "they transfer energy from the user to the device wherein a set of dies forms a cutting edge." Id. at 12. In support of its contention that subject punches are machines, Plaintiff submitted the testimony of mechanical engineer, Dr. P.R. Frise, as an expert. Id. at 12; Affirm. of Dr. Peter R. Frise; Ex. A-D to Pl.'s Mot. After reviewing the Twenty Punches provided by Plaintiff, Dr. Frise advised that those punches are indeed machines because they "utilize a lever, an inclined plane, and an axle to transmit forces and perform work." Id. at 12. However, Plaintiff's proffered testimony from its expert is inapposite for two reasons: (1) Dr. Frise advised on punches that are not at issue in this case, Def.'s Facts ¶ 6; and (2) Defendant conceded that based on its common meaning, a punch itself is a machine," Def.'s Cross Mot. at 4. Further, Defendant stated that the "articles of [its proposed] Heading 8203" are "also machines, if only simple machines." Def.'s Reply Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Further Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s Opp'n") at 6.

      Defendant contended, however, that the subject punches "are properly

classifiable in subheading 8203.40.60 because they are described *eo nomine*[12] by this subheading and are excluded by Exclusionary Note 1(k) to Section XVI[13] from classification in subheading 8441.10.00." Def.'s Cross Mot. at 8.

## II. GRI Analysis

Classification of merchandise is governed by the General Rules of Interpretation ("GRIs"). *Avenues in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005). The GRIs direct "the proper classification of all merchandise and are applied in numerical order." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). The Court may not consult any subsequent GRI unless the proper classification cannot be determined by reference to GRI 1. *Mita Copystar Am. v. United States*, 160 F. 3d 710, 712 (Fed. Cir. 1998). According to GRI 1, "classification shall be determined according to the terms of the headings and any relative section or chapter notes[.]" Parties agree that the classification determination may be made under GRI 1, but each party submits a different heading as the correct classification.

---

[12] *Eo nomine* means an item is "identified by name." *Len-Ron Mfg. Co., Inc. v. United States*, 334 F.3d 1304, 1308 (Fed. Cir. 2003).

[13] Exclusionary Note 1(k) to Section XVI, which includes Chapter 84, instructs, in relevant part:

> Notes
> 1. This section does not cover:
> . . .
> (k) Articles of chapter 82 or 83.

Defendant asserted that the "proper classification of the 'punches' may be determined through Rule 1" of the GRI. Def.'s Opp'n at 2. Upon entry, Customs classified the subject punches under Heading 8203, HTSUS. Customs claimed the subject merchandise falls squarely under "perforating punches" which is an enumerated article under Heading 8203, HTSUS. The terms perforating and punch are not explicitly defined within the HTSUS, and in such circumstances, "[t]ariff terms are construed in accordance with their common or popular meaning." *Medline Indus., Inc. v. United States*, 62 F.3d 1407, 1409 (1995). The Court

> may rely upon its own understanding of terms used, and may consult standard lexiographic and scientific authorities to determine the common meaning of a tariff term.

*Mita Copystar Am. v. United States*, 21 F.3d 1079, 82 (Fed. Cir. 1994)).

Accordingly, the Court consulted Webster's Dictionary for the common meanings of the terms "perforating" and "punch." The first definition for "perforate" in Webster's Dictionary is "to make a hole through: pierce, puncture." *Webster's Third New International Dictionary* 1678 (1981). The relevant definition for "punch" as a noun is "1.b: a device or machine for performing the operations of a hand punch: . . . (1): a hand-operated device for cutting holes or notches in paper or cardboard." *Id.* 1678. Read together, the common meaning for perforating punch is a hand-operated device for cutting or making holes in or through paper or cardboard. The Court finds that the

subject punches fall squarely under this common definition of perforating punch.

Hence, the Court agrees with Customs that the subject merchandise is described by the exemplar "perforating punches" listed *eo nominee* under Heading 8203, HTSUS.[14] This Court must "consider a HTSUS heading or subheading an *eo nomine* provision when it describes an article by a specific name." *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011) (citation omitted). The Court notes that the exemplar "perforating punches" is coupled with the exemplar "similar handtools," separated from the other articles by commas, which indicates that handtools modify punches. Customs argued that this construction means that "classification in Heading 8203 is limited to those punches that are designed to operate best when used in a hand-held fashion." Def.'s Opp'n at 7. But Plaintiff countered that the punches are "not specifically intended or designed to be used as a handtool." Pl.'s Opp'n at 13.

Upon review of the term "handtool" in Webster's Dictionary, one is directed to

---

[14] Plaintiff conceded that HTSUS Heading 8203 "covers a wide range of tools" but then asserted that this heading "contains no language specifically, or even remotely, describing the merchandise at issue . . . . Not only are paper punches entirely different from files, rasps, pliers, and the other exemplars in this subheading, they also perform entirely different functions." Pl.'s Mot. at 14. Plaintiff's assertion is specious. HTSUS Heading 8203 does indeed cover a wide range of tools, all with different functions, with the common thread of these tools is that they are all worked by the hand. This common thread applies to the subject punches. Also, Plaintiff selectively quotes the tariff, leaving out the phrase "perforating punches," which undermines Plaintiff's assertion that Heading 8203 contains "no language" describing the subject merchandise at issue.

the first definition under "tool," which reads: "1 a : an instrument . . . used or worked by hand." *Webster's Third New International Dictionary* 1028, 2408. The Court applies this definition and finds that handtools do not have to be intended or designed to be operated wholly in the hand, but rather they need only be worked by hand. Therefore, the Court rejects Customs' "operates best test"[15] because applying the common meaning of the term handtool does not require that a tool or machine be operated wholly in the hand. The subject punches—whether they are used in the hand, as Defendant asserts, or whether they are used against a flat surface, as Plaintiff asserts—need to be operated with at least one hand, if not two hands, so they are handtools according to the common meaning of the term. The Court finds that subject punches *prima facie* fall under Heading 8203 as a perforating punch.

Next the Court considers Plaintiff's proposed HTSUS Heading 8441, which provides for "[o]ther machinery for making up paper pulp, paper or paperboard, including cutting machines of all kinds." Plaintiff asserted that the subject punches are cutting machines. Customs conceded that the subject punches are simple machines but

---

[15] Customs apparently used two different tests to determine the classification of the subject punches: "designed to be hand-held when using them" and "operated better when . . . placed on a desk or table." Def.'s Cross Mot. at 11-12. Confusion surrounds these tests, and in any case, the GRIs do not contemplate using such tests to determine classification. Furthermore, Customs apparently conducted these tests on only nine of the actual physical samples. Given these facts, the Court determines classification without regard to these Customs tests.

postulated that "the simplicity of the features and the purpose for [the subject punches'] use simply do not rise to the dignity of a machine contemplated by Heading 8441." Def.'s Suppl. Br. at 7. Customs purported that the machine contemplated by Heading 8441 applies only to "more complex" machines, not "simple machines" such as the subject punches. *Id.* at 3. The Court notes that Heading 8441 does not contemplate such a distinction between simple and non-simple machines.

Plaintiff claimed Heading 8441, HTSUS, as the correct classification based upon the description "cutting machines of all kinds." However, Plaintiff again selectively quotes the tariff, leaving out the key language "other machinery for making up paper pulp, paper or paperboard, including . . . ." Reviewing and parsing this heading in its entirety, the Court finds that subject merchandise cannot fall under Heading 8441, HTSUS, unless it is a cutting machine "for making up paper pulp, paper or paperboard." Upon a plain reading of the language in the heading, the phrase "including cutting machines of all kinds" is subordinate to all that comes before the word "including." This is the only grammatically correct construal of a phrase that is set apart by commas and begins with the word "including." *See, e.g., Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363 (Fed. Cir. 1998) (discussing the canon of construction *expressio unius est exclusio alterius*—"the expression of one is the exclusion of others"—when a phrase starts with the word "including"). Heading 8441 is not a

cutting machine provision; it is a paper production machine provision, specifically "for making up paper pulp, paper or paperboard." While paper production machines may be cutting machines, not all cutting machines are paper production machines. Such is the instant case: while subject punches may be described as cutting machines, they are not paper production machines. The Court finds that subject punches do not fall under Heading 8441, because they are not cutting machines for making up paper pulp, paper or paperboard.

Plaintiff asserted the opposite argument to that of Customs; Heading 8203 is not applicable because perforating punches in this tariff heading are meant for industrial uses. In support of its claim, Plaintiff provided an industrial definition of the term perforating punch. Pl.'s Supplemental Mem. of Points and Authorities in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Suppl. Br.") at 6–10. The Court reiterates that headings are afforded their common meaning, not a meaning that is a term of art particular to an industry. Therefore, the Court finds Plaintiff's offering of an industrial definition of perforating punch unavailing.

Assuming *arguendo* that the subject punches *prima facie* fell within Heading 8441 based upon the cutting machine language, Section Note 1(k) would still exclude consideration of this heading. Along with the terms of the headings, "any relevant section or chapter notes" must be considered because chapter and section notes "are not

optional interpretative rules, but are statutory law, codified at 19 U.S.C. § 1202."

*Avenues in Leather*, 423 F.3d at 1333 (quotation omitted). The Section Notes for Section XVI of the HTSUS, which includes Chapter 84, specifically excludes "[a]rticles of chapter 82 and 83" from classification under Section XVI. Section Note 1(k) to Section XVI. Customs argued that the proper reading of Section VXI, Note 1(k) excludes classification in Heading 8441. Def.'s Cross Mot. at 12. The Court agrees. Applying the *Avenues in Leather* analysis regarding exclusionary notes, if the decorative punches are classifiable under chapter 82, then they cannot be classified under chapter 84. *See Avenues in Leather*, 423 F.3d at 1333-34; *see also Container Store v. United States*, 35 CIT __, 800 F. Supp. 2d 1329, 1335 (2011) (applying the *Avenues in Leather* analysis for exclusionary notes under Section XV).[16] Therefore, even if the subject punches would have been *prima facie* classifiable as cutting machines under Heading 8441, Section Note 1(k) would have applied and Chapter 84 would be excluded from consideration.

The Court finally examines the applicable heading for the proper subheading. Upon review of the subheadings under Heading 8203, the Court finds that the proper subheading is the basket provision of "[o]ther." Therefore, the Court holds the correct

---

[16] The Court combed the HTSUS for other possible headings for the decorative punches but did not find a heading more descriptive. The Court also reviewed Customs Ruling Letters and discovered that Customs had previously classified similar decorative punches under various tariffs. The Court considered these classifications but decided that Subheading 8203.40.60, HTSUS, is the correct classification.

Court No. 10-00066   Page 16

tariff classification for the subject punches is 8203.40.60, HTSUS.

## CONCLUSION

Because there is no dispute between the parties as to the nature of the merchandise involved in this case, and the only issues to be resolved are legal, the case is ripe for disposal at the summary judgment stage. *See, e.g., Value Vinyls, Inc. v. United States*, 31 CIT 173, 175, 2007 WL 273839 at *2 (2007) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).)

Because this Court affirms Defendant's preferred tariff classification of 8203.40.60, HTSUS, Plaintiff's Motion for Summary Judgement is denied and Defendant's Cross Motion for Summary Judgment is granted. Judgment will enter accordingly.

/s/ Gregory W. Carman
Gregory W. Carman, Judge

Dated: September 27, 2012
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WILTON INDUSTRIES, INC.,<br><br>              Plaintiff,<br><br>   v.<br><br>UNITED STATES,<br><br>              Defendant. | Before: Gregory W. Carman, Judge<br><br>Court No. 10-00066 |

### JUDGMENT

This case having been duly submitted for decision; and the Court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision, it is hereby

**ORDERED, ADJUDGED and DECREED** that Defendant United States' Cross-Motion for Summary Judgment is granted and Plaintiff Wilton Industries, Inc.'s Motion for Summary Judgment is denied; and it is further

**ORDERED** that Customs' classification of the subject merchandise under subheading 8203.40.60, HTSUS, is sustained; and it is further

**ORDERED** that the stay entered by the Court on Plaintiff's motion for oral argument (ECF No. 65) is hereby LIFTED; and it is further

**ORDERED** that Plaintiff's motion for oral argument is hereby DENIED, and it is further

**ORDERED** that judgment awarded to Defendant United States.

                                                      /s/ Gregory W. Carman<br>
                                                      Gregory W. Carman, Judge

Dated: September 27, 2012<br>
       New York, New York